# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

TEXOMA MFG., LLC,          )
                                       )

        Plaintiff,           )
                                       )

v.                             )          **Case No. CIV-19-148-SPS**
                                       )

MONROE ENVIRONMENTAL,    )
                                       )

        Defendant.        )

## ORDER DENYING PLAINTIFF'S MOTION FOR
## SANCTIONS AGAINST DEFENDANT FOR SPOLIATION OF EVIDENCE

Plaintiff Texoma MFG, LLC ("Texoma") sued Monroe Environmental ("Monroe") in Oklahoma state court in the District Court of Bryan County, Case No. 19-CJ-63 alleging a breach of contract, which the Defendant removed to this Court. The Plaintiff has now moved the Court for sanctions against the Defendant, alleging spoliation of material evidence in the present case. For the reasons set forth below, the Court finds that the Plaintiff's Motion for Sanctions Against Defendant for Spoliation of Evidence [Docket No. 21] should be DENIED.

## BACKGROUND

According to the parties, Monroe entered into a contract with Texoma whereby Texoma would manufacture and deliver a total of five tanks, for which Monroe provided the design. Texoma manufactured the first two tanks (1 and 2) and delivered them to Monroe's end-user, SwiftWater. Prior to delivery, Monroe conducted an inspection of Tanks 1 and 2 on June 4, 2018 at Texoma's facility. In September 2018 and after delivery,

Texoma was notified that these two tanks had a problem related to premature corrosion. Texoma then delivered more two tanks (3 and 4) to SwiftWater and retrieved the original two tanks (1 and 2) to repair them based on specifications provided by Monroe. The original two tanks (1 and 2), and the final tank under construction (5) were inspected at Texoma's facility by a company hired by Monroe, B&N Inspection and Supply, in October 2018. Those three tanks (1, 2, and 5) were then also sent back to the end-user. In November 2018, Monroe notified Texoma of a "second failure," conveying that all five tanks had now (again) failed. Monroe contends that all five tanks failed in the same or similar fashion as the first failure, due to a manufacturing defect. Texoma offered to take the tanks back to repair them, and Monroe declined. At that time, Monroe had only paid half the contract price for the five tanks and had not paid for the repairs done on Tanks 1 and 2. Monroe then hired a third party to repair all five tanks so that they could be put back to work. In January 2019, Monroe sent an invoice to Texoma for that repair work.

On April 8, 2019, Texoma sued Monroe for breach of contract for the unpaid remainder of the invoice, as well as for the cost of the repairs for Tanks 1 and 2. Monroe has filed a counterclaim for breach of contract, breach of express and implied warranties, and unjust enrichment. Texoma now seeks dismissal of Monroe's counterclaims as the only appropriate remedy for their alleged spoliation of evidence in repairing the tanks.

## ANALYSIS

The Plaintiff has moved for sanctions against the Defendant pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi) and this Court's inherent authority, for spoliation of material evidence. As part of this motion, Texoma contends that they were not allowed to inspect

all five tanks in November 2018 after Monroe alleged the second failure. Texoma therefore contends that this lack of ability to inspect deprived the company of a defense to Monroe's counterclaims because Monroe had the tanks repaired and deprived Texoma of the ability to determine whether Swiftwater may have used the tanks for an inappropriate purpose which caused the failure.

Fed. R. Civ. P. 37(b)(2)(A), in relevant part, states, "If a party . . . fails to obey an order to provide or permit discovery[,] the court where the action is pending may issue further just orders, [including:] (v) dismissing the action or proceeding in whole or in part." And one of the "inherent powers" of the Court that "must be exercised with restraint and discretion" is "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1992). *See also Smith v. Northwest Financial Acceptance, Inc.,* 129 F.3d 1408, 1419 (10th Cir.1997) ("[A] federal court possesses the authority to impose . . . sanctions on its inherent power to control and supervise its own proceedings.") (internal quotation omitted). Accordingly, "Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Turner v. Public Service Co. of Colorado,* 563 F.3d 1136, 1149 (10th Cir. 2009), *citing Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007). *See also Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 139 F.3d 912, 1998 WL 68879, at *4 (10th Cir. 1998) (unpublished Table opinion) ("When deciding whether to sanction a party for the spoliation of evidence, courts have considered a variety of factors, two of which generally carry the most weight: (1) the

degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of actual prejudice to the other party."). Moreover, "[a] litigant has a duty to preserve evidence that he knows or should know is relevant to imminent or ongoing litigation." *Jordan F. Miller*, 1998 WL 68879, at \*5.

Under both Oklahoma and Tenth Circuit case law, the type and severity of any sanction imposed is in direct proportion to the nature of the conduct being sanctioned. Under Oklahoma law, "Willfulness or bad faith, or intentional conduct, goes to the *severity* of the sanctions to be imposed, and the most severe sanctions, such as dismissal of the case, should be imposed only where the party's conduct is intentional, willful or in bad faith." *Barnett v. Simmons*, 2008 OK 100, ¶ 24, 197 P.3d 12, 21. As such, "Factors that should be considered prior to choosing the most severe sanctions include the following: willfulness, prejudice, whether there was a warning that failure to cooperate could lead to dismissal, whether less drastic sanctions were imposed or considered, and the amount of interference with judicial process." *Barnett*, *id.* at ¶ 26, 197 P.3d at 21, *citing Payne v. DeWitt,* 1999 OK 93, 995 P.2d 1088*; Hotels, Inc. v. Kampar Corp.,* 1998 OK CIV APP 93, 964 P.2d 933. But "[a] party is not automatically entitled to a sanction just because evidence is destroyed or altered." *See Akins v. Ben Milam Heat, Air & Elec., Inc*., 2019 OK CIV APP 52, ¶ 59, 451 P.3d 166. Rather, each factual situation must be assessed to determine what, if any, sanction should be applied.

Likewise under Tenth Circuit law, "dismissal represents an extreme sanction appropriate only in cases of willful misconduct." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992), *citing Meade v. Grubbs,* 841 F.2d 1512, 1520 (10th Cir. 1988)

(*overruled on other grounds*); *M.E.N. Co. v. Control Fluidics, Inc.,* 834 F.2d 869, 872–873 (10th Cir. 1987); *In re Standard Metals Corp.,* 817 F.2d 625, 628–629 (10th Cir. 1987). Similarly to Oklahoma law, the Tenth Circuit sets out a number of factors to consider before choosing dismissal, although they do not represent a "rigid test": "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process[;] (3) the culpability of the litigant[;] (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance[;] and (5) the efficacy of lesser sanctions." *Ehrenhaus*, 965 F.2d at 921 (internal quotations and citations omitted). "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." *Id.* (quotation omitted). *See also Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) ("The adverse inference must be predicated on the bad faith of the party destroying the records. Mere negligence in losing or destroying records is not enough[.]").

Here, Texoma is not contending that Monroe acted in bad faith in repairing the tanks. Texoma does contend, however, that Monroe's actions nevertheless have deprived them of the ability to defend themselves from Monroe's counterclaims. Accordingly, the question remains as to whether dismissal, or some other lesser sanction, is appropriate under the facts of this case.

As to the first *Ehrenhaus* factor, the Court finds that there is some prejudice to Texoma in that the tanks are no longer in a condition to be inspected. Texoma contends that they are wholly without the ability to defend themselves from Monroe's counterclaims. However, Texoma's counsel informed the Court that they have hired an expert to examine

the design specifications for the tanks, and that he has rendered an opinion that there are defects in the design provided by Monroe. In contrast, Monroe's expert has apparently opined that the designs, if implemented correctly, would not have resulted in the damages suffered. Texoma asserts that, without the actual tanks in their damaged condition, they cannot combat the argument that "but for a manufacturing defect, this design would have been fine." The Court agrees that there is a disadvantage to Texoma in their inability to have an expert assess the tanks after the alleged second failure and prior to the repairs, and assumes prejudice to Texoma, but finds that Texoma is not wholly without the ability to defendant itself from Monroe's counterclaims given the opinion already obtained by their expert.

Turning to the second *Ehrenhaus* factor, interference with the judicial process, the Court finds that Monroe's actions did not. As to the second failure of all five tanks, Monroe had the repairs to the tanks performed sometime between November 2018 and January 2019; Texoma did not file suit for over three more months, on April 8, 2019. Accordingly, Monroe's actions did not interfere with the judicial process and thus do not implicate the second *Ehrenhaus* factor. Nor does the fourth *Ehrenhaus* factor apply here—whether the Court warned Monroe in advance that dismissal would be a likely sanction for noncompliance with a Court order.

The third factor—the culpability of the litigant—warrants some discussion. Monroe is "culpable" in the sense that they made a deliberate decision to repair all five tanks after the second failure, and that they chose a third party over Texoma to make those repairs. But central to Monroe's defense is that they repaired the tanks and placed them back in

operation in order to mitigate damages, rather than out of any bad faith or willfulness, and they took these actions well in advance of the filing of this lawsuit. Accordingly, "this was not a case in which the litigant intentionally refused to appear, acted in bad faith, intentionally hid facts or information, or intentionally delayed the justice process." *Turner v. Anderson*, 2018 WL 3025055, at *4 (D.N.M. June 18, 2018). On the other hand, "Plaintiff's duty to mitigate damages and its duty to preserve evidence are not mutually exclusive." *Mariposa Farms, LLC v. Westfalia-Surge, Inc.*, 2005 WL 8164175, at *2 (D.N.M. Feb. 3, 2005).

The Court ultimately concludes, however, that Monroe's decision to repair the tanks is not indicative of great culpability. At the time the tanks were repaired, litigation was not imminent and there is no evidence Monroe was aware that it would be. *See, e. g., Zolo Techs. v. Roadway Exp. Inc.*, 2006 WL 898132, at *3 (D. Colo. Apr. 4, 2006) ("The Court finds little or no culpability on the part of the Plaintiff in salvaging the Rack Assembly, other than the actual conscious decision to salvage it. At the time the Rack Assembly was salvaged, Plaintiff did not know (nor reasonably should have known) that litigation was imminent."). *Compare with 103 Inv'rs I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006) ("*The district court found that plaintiff had a duty to preserve the evidence because it knew or should have known that litigation was imminent*, and defendant was prejudiced by the destruction of the evidence because there was no substitute for a direct visual examination of the busway. The district court also imposed the least severe sanction that would be appropriate to balance out the prejudice to the defendant. We conclude that the district court did not abuse its discretion in granting defendant's motion for sanctions

and striking Mr. Goens' testimony.") (emphasis added); *Mariposa Farms*, 2005 WL 8164175, at *2 (D.N.M. Feb. 3, 2005) ("On July 2, 2003, Plaintiff filed this lawsuit against Defendants. In late July or early August, 2003, after the lawsuit was filed, Plaintiff significantly altered the milking system and its components. Plaintiff had approximately six weeks from the time Dr. Reitsma recommended making changes to the milking system and its components to the time Plaintiff began making changes in which to notify Rota-Tech and afford it an opportunity to inspect and/or test the system as it existed prior to the changes being made. Plaintiff's changes to the milking system and its components without prior notice deprived Rota-Tech of the opportunity to gather direct evidence with which to support its defense to Plaintiff's claims that the vacuum pressure in the milking system was deficient as the system existed before the alterations were made."). Moreover, the cases cited by Texoma in support of dismissal are products liability cases wherein the evidence is truly the central fulcrum of the case more so than in a breach of contract case, *see Silvestri v. General Motors Corp.*, 271 F.3d 583, 585 (4th Cir. 2001), or are otherwise distinguishable by a Court's finding of bad faith, *see, e. g.*, *Barnett*, 2008 OK 100, 197 P.3d 12.

Finally, the Court turns to the fifth *Ehrenhaus* factor, the efficacy of lesser sanctions, and finds that lesser sanctions are not appropriate in this case. In arguing for dismissal, Texoma contends that lesser sanctions are not appropriate, noting even that an adverse inference instruction or exclusion of expert evidence would result in either incomplete information or a complete deprivation of evidence. The Court agrees with these arguments and therefore finds that neither dismissal nor a lesser sanction is appropriate in this case.

In sum, the Court finds that the aggravating factors do not outweigh "the judicial system's strong predisposition to resolve cases on their merits[.]"  *Ehrenhaus*, 965 F.2d at 921.

The Court further finds that the application of Oklahoma law, with the *Barnett* factors, would result in the same conclusion.  *See Holley v. Evangelical Lutheran Good Samaritan Society*, 2012 WL 12903865, at *2 (D.N.M. Sept. 14, 2012) ("[S]ome federal courts hold that where, as here, the spoliation took place before the federal suit was filed, and even if spoliation is treated solely as an evidentiary issue, state law still controls.").

IT IS THEREFORE ORDERED that Plaintiff's Motion for Sanctions Against Defendant for Spoliation of Evidence [Docket No. 21] is hereby DENIED.

IT IS SO ORDERED this 24th day of February, 2020.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma